**OPERATING ENGINEERS TRUST FUNDS**
P.O. Box 23190
Oakland, CA 94623-0190

OE-E34

US POSTAGE PITNEY BOWES

ZIP 94502
02 4W  $ 002.04⁰
0000389599 NOV 21 2024

Craig Fravel
Pacific Racing Association I *and* Pacific
Racing Association II
1100 Eastshore Blvd.
Berkeley, CA 94710

**OPERATING ENGINEERS TRUST FUNDS**
P.O. Box 23190
Oakland, CA 94623-0190

OE-E34



CERTIFIED MAIL

9589 0710 5270 2388 8325 15
9589 0710 5270 2388 8325 15



U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postage $

Craig Fravel
Pacific Racing Association I and Pacific
Racing Association II
1100 Eastshore Blvd.
Berkeley, CA 94710

Postmark
Here

Instructions

Berkeley, CA 94710



US POSTAGE ™ PITNEY BOWES

ZIP 94502   $ 011.26⁰
02 4W
0000389599 NOV 21 2024

**OPERATING ENGINEERS TRUST FUNDS**
P.O. Box 23190
Oakland, CA 94623-0190

OE-E34

US POSTAGE ᴵᴹᴾ PITNEY BOWES

ZIP 94502
02 4W
0000389599

$ 011.26⁰

NOV 21 2024

Craig Fravel
Pacific Racing Association I *and* Pacific
Racing Association II
1100 Eastshore Blvd.
Berkeley, CA 94710

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | **A. Signature**<br>X      ☐ Agent<br>             ☐ Addressee |
| **1. Article Addressed to:**<br><br>Craig Fravel<br>Pacific Racing Association I *and* Pacific Racing Association II<br>1100 Eastshore Blvd.<br>Berkeley, CA 94710 | **B. Received by** *(Printed Name)*    **C. Date of Delivery** |
| | **D. Is delivery address different from Item 1?** ☐ Yes<br>If YES, enter delivery address below:   ☐ No |

9590 9402 8601 3244 4500 03

**3. Service Type**
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

**2. Article Number** *(Transfer from service label)*

9589 0710 5270 2388 8325 15

PS Form **3811**, July 2020 PSN 7530-02-000-9053        Domestic Return Receipt

**OE3 Trust Funds**

Health. Security. Service.

OPERATING ENGINEERS TRUST FUNDS

1141 Harbor Bay Parkway, Suite 100, Alameda, CA 94502-6594
P.O. Box 23190, Oakland, CA 94623-0190

(800) 251-5014 • OE3TRUSTFUNDS.ORG

VIA CERTIFIED MAIL
(WITH RETURN RECEIPT REQUESTED)
AND FIRST-CLASS MAIL

November 21, 2024

Craig Fravel
Pacific Racing Association I *and* Pacific Racing Association II
1100 Eastshore Blvd.
Berkeley, CA 94710

> RE:    Pension Plan for the Pension Trust Fund for Operating Engineers

Dear Mr. Fravel:

### I. Withdrawal Liability

During 2024, Pacific Racing Association and Pacific Racing Association II (the "Employer") made a complete withdrawal under ERISA §4203(a) (29 U.S.C. §1383(a)) from the Pension Plan for the Pension Trust Fund for Operating Engineers ("Plan"), a multiemployer defined benefit pension plan. The Plan has a fiscal year running from January 1, through December 31, therefore the withdrawal liability is calculated as of December 31, 2023, as required by ERISA §4211(b)(2)(A) (29 U.S.C. 1391(b)(2)(A)). As of that date the withdrawal liability of the Employer is $1,581,889.00 payable in quarterly installments of $45,035.47.

### II. Assessment of Withdrawal Liability

ERISA §4202 (29 U.S.C. 1382) requires that when an employer withdraws from a multiemployer plan the Board of Trustees shall determine the amount of withdrawal liability, notify the employer of the amount, and collect the amount of the withdrawal liability from the employer. Under ERISA §4201 (29 U.S.C. 1381) a withdrawn employer including all members of its controlled group (and any successors or alter egos) is liable to the Plan for the amount of its withdrawal liability. Because the Plan primarily covers employees in the building and construction industry it must use the presumptive method described in ERISA §4211(b) (29 U.S.C. 1391(b)) in calculating the amount of withdrawal liability.

A. <u>Unfunded Vested Benefits</u> Under ERISA §4211(b) (29 U.S.C. 1391(b)) withdrawal liability is based on a plan's unfunded vested benefits allocable to the employer. The Employer's withdrawal liability was calculated under the provisions of ERISA §4211(b)(1)(A) (29 U.S.C. 1391(b)(1)(A)), which requires allocating the unamortized change in the Plan's unfunded vested benefits after June 30, 1980. The computation of that amount is shown to be $1,581,889.00 on the enclosed *Exhibit A*.

Craig Fravel
November 21, 2024
Page 2

B. <u>Payment of Withdrawal Liability</u> Payment of withdrawal liability is governed by ERISA §4219(c) (29 U.S.C. 1399(c)). The annual payment calculated under subsection (1)(C) is $180,141.86. This results in fifty-two quarterly payments of $45,035.47 and a final payment of $21,250.66 under ERISA §4219(c)(3) (29 U.S.C. 1399(c)(3)).

C. <u>Assessment of Withdrawal Liability</u> The Employer, and each member of its controlled group (and any successor or alter egos), jointly and severally, are hereby assessed a withdrawal liability of $1,581,889.00 payable in one lump sum before January 1, 2025, or installments payable as follows:

| Amount of Installment | Due Date |
|---|---|
| $45,035.47 | January 1, 2025 |
| $45,035.47 | April 1, 2025 |
| $45,035.47 | July 1, 2025 |
| $45,035.47 | October 1, 2025 |
| $45,035.47 | Each following quarter through October 1, 2037 |
| $21,250.66 | January 1, 2038 |

D. <u>Payment Address</u>

We encourage you to pay the withdrawal liability via ACH as follows:
Fremont Bank
39150 Fremont Blvd., Fremont, CA 94538
Operating Engineers Pension Trust Fund Admin Checking / Concentration
Routing # 1211-07882
Account # 4917472

Alternatively, you can pay by check payable to: "Operating Engineers Pension Plan" and mail to the following address:

Operating Engineers Pension Plan
Withdrawal Liability Payment Account
Zenith American Solutions, Inc.
Attention: Greg Trento
1141 Harbor Bay Parkway, Suite 100
Alameda, California 94502

## III.   <u>Appeal Procedure</u>

Pursuant to ERISA §4219(b)(2) (29 U.S.C. 1399(b)(2)) within 90 days after receipt of this letter the Employer may ask the Board of Trustees to review any specific matters relating to

Craig Fravel
November 21, 2024
Page 3

the determination and schedule of payments, identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocation, and may furnish any additional relevant information to the Board. <u>Please note than under ERISA §4219(c)(2) withdrawal liability is payable in accordance with the above schedule, notwithstanding any request for review or appeal of determination of the amount of the liability or schedule of payments.</u>

Under ERISA §4221(a) (29 U.S.C. 1401(a)) any dispute concerning a determination of withdrawal liability is to be resolved through arbitration. If you want to initiate arbitration you must do so within the 60 day period after the earlier of 120 days after you make a request under ERISA §4219(b)(2)(A) described above, or the date the Board notifies you of its decision in response to your request. <u>Please note that under ERISA §4221(d) (29 U.S.C. 1401(d)) the Employer must make the required withdrawal liability assessment payments even if arbitration is started.</u>

Enclosed as *Exhibit B* is a copy of the Plan's withdrawal liability procedures.

## IV.    Controlled Group and Other Information

ERISA §4001(b)(1) (29 U.S.C. 1301(b)(1)) provides that for purposes of withdrawal liability all employees of trades and businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer. Please provide the Plan with the information and documents requested in the enclosed *Exhibit C* to assist the Plan with recovering the assessed withdrawal liability. Under ERISA §4219(a) (29 U.S.C. 1391(a)) you must supply this information within 30 days.

As a courtesy, FAQs are included as *Exhibit D.*

## V.    Other Amounts Due

The amount of this withdrawal liability is separate and distinct from other amounts that may be owed by the Employer, including contributions or any amounts found due as a result of payroll audits.

If you have any questions about this withdrawal liability assessment, please call me.

Sincerely,

Greg Trento,
Vice President – Client Services

Craig Fravel
November 21, 2024
Page 4


Enclosure

Cc:          All Trustees
             Shaamini A. Babu, Esq.
             Sabrina Putri, Esq.

EXHIBIT A

Pension Trust Fund for Operating Engineers
Estimated Withdrawal Liability Assessment for Terminations in Plan Year Beginning January 1, 2024

| | | |
|---|---|---|
| 1) | 12/31/2004 Unfunded Vested Benefits for Withdrawal Liability | $1,156,671,026 |
| 2) | 12/31/2005 Unfunded Vested Benefits for Withdrawal Liability | $1,259,652,260 |
| 3) | 12/31/2006 Unfunded Vested Benefits for Withdrawal Liability | $1,120,600,308 |
| 4) | 12/31/2007 Unfunded Vested Benefits for Withdrawal Liability | $1,317,161,200 |
| 5) | 12/31/2008 Unfunded Vested Benefits for Withdrawal Liability | $1,546,421,374 |
| 6) | 12/31/2009 Unfunded Vested Benefits for Withdrawal Liability | $2,302,881,666 |
| 7) | 12/31/2010 Unfunded Vested Benefits for Withdrawal Liability | $2,523,866,964 |
| 8) | 12/31/2011 Unfunded Vested Benefits for Withdrawal Liability | $2,934,113,048 |
| 9) | 12/31/2012 Unfunded Vested Benefits for Withdrawal Liability | $3,193,604,979 |
| 10) | 12/31/2013 Unfunded Vested Benefits for Withdrawal Liability | $2,729,318,298 |
| 11) | 12/31/2014 Unfunded Vested Benefits for Withdrawal Liability | $2,834,789,366 |
| 12) | 12/31/2015 Unfunded Vested Benefits for Withdrawal Liability | $3,115,938,067 |
| 13) | 12/31/2016 Unfunded Vested Benefits for Withdrawal Liability | $3,191,093,701 |
| 14) | 12/31/2017 Unfunded Vested Benefits for Withdrawal Liability | $3,057,965,858 |
| 15) | 12/31/2018 Unfunded Vested Benefits for Withdrawal Liability | $3,255,247,773 |
| 16) | 12/31/2019 Unfunded Vested Benefits for Withdrawal Liability | $3,171,795,213 |
| 17) | 12/31/2020 Unfunded Vested Benefits for Withdrawal Liability | $3,328,783,959 |
| 18) | 12/31/2021 Unfunded Vested Benefits for Withdrawal Liability | $2,780,253,702 |
| 19) | 12/31/2022 Unfunded Vested Benefits for Withdrawal Liability | $2,697,371,751 |
| 20) | 12/31/2023 Unfunded Vested Benefits for Withdrawal Liability | $2,161,078,103 |
| | | |
| 21) | 12/31/2004 Pool Balance at 12/31/2023 | $22,423,993 |
| 22) | 12/31/2005 Pool Balance at 12/31/2023 | $16,443,312 |
| 23) | 12/31/2006 Pool Balance at 12/31/2023 | -$10,406,761 |
| 24) | 12/31/2007 Pool Balance at 12/31/2023 | $52,597,777 |
| 25) | 12/31/2008 Pool Balance at 12/31/2023 | $77,188,927 |
| 26) | 12/31/2009 Pool Balance at 12/31/2023 | $255,454,356 |
| 27) | 12/31/2010 Pool Balance at 12/31/2023 | $125,457,053 |
| 28) | 12/31/2011 Pool Balance at 12/31/2023 | $227,874,637 |
| 29) | 12/31/2012 Pool Balance at 12/31/2023 | $201,779,013 |
| 30) | 12/31/2013 Pool Balance at 12/31/2023 | -$126,956,195 |
| 31) | 12/31/2014 Pool Balance at 12/31/2023 | $167,861,555 |
| 32) | 12/31/2015 Pool Balance at 12/31/2023 | $295,561,420 |
| 33) | 12/31/2016 Pool Balance at 12/31/2023 | $200,303,187 |
| 34) | 12/31/2017 Pool Balance at 12/31/2023 | $84,451,085 |
| 35) | 12/31/2018 Pool Balance at 12/31/2023 | $343,798,473 |
| 36) | 12/31/2019 Pool Balance at 12/31/2023 | $154,861,473 |
| 37) | 12/31/2020 Pool Balance at 12/31/2023 | $377,667,074 |
| 38) | 12/31/2021 Pool Balance at 12/31/2023 | -$214,749,121 |
| 39) | 12/31/2022 Pool Balance at 12/31/2023 | $204,161,003 |
| 40) | 12/31/2023 Pool Balance at 12/31/2023 | -$263,406,345 |
| | | |
| 41) | Employer Name | Pacific Racing Assocation |
| 42) | Account Number(s) | 1363 |
| | | |
| 43) | Contributions from January 1, 2000 - December 31, 2000 | $99,366 |
| 44) | Contributions from January 1, 2001 - December 31, 2001 | $76,418 |
| 45) | Contributions from January 1, 2002 - December 31, 2002 | $75,467 |
| 46) | Contributions from January 1, 2003 - December 31, 2003 | $72,629 |
| 47) | Contributions from January 1, 2004 - December 31, 2004 | $67,069 |
| 48) | Contributions from January 1, 2005 - December 31, 2005 | $62,512 |
| 49) | Contributions from January 1, 2006 - December 31, 2006 | $68,595 |
| 50) | Contributions from January 1, 2007 - December 31, 2007 | $77,628 |
| 51) | Contributions from January 1, 2008 - December 31, 2008 | $121,964 |
| 52) | Contributions from January 1, 2009 - December 31, 2009 | $138,490 |
| 53) | Contributions from January 1, 2010 - December 31, 2010 | $142,220 |
| 54) | Contributions from January 1, 2011 - December 31, 2011 | $151,573 |
| 55) | Contributions from January 1, 2012 - December 31, 2012 | $151,688 |
| 56) | Contributions from January 1, 2013 - December 31, 2013 | $155,427 |
| 57) | Contributions from January 1, 2014 - December 31, 2014 | $148,867 |
| 58) | Contributions from January 1, 2015 - December 31, 2015 | $151,258 |
| 59) | Contributions from January 1, 2016 - December 31, 2016 | $157,902 |
| 60) | Contributions from January 1, 2017 - December 31, 2017 | $164,494 |

Pension Trust Fund for Operating Engineers

Estimated Withdrawal Liability Assessment for Terminations in Plan Year Beginning January 1, 2024

| | | |
|---|---|---|
| 61) | Contributions from January 1, 2018 - December 31, 2018 | $170,540 |
| 62) | Contributions from January 1, 2019 - December 31, 2019 | $173,818 |
| 63) | Contributions from January 1, 2020 - December 31, 2020 | $157,007 |
| 64) | Contributions from January 1, 2021 - December 31, 2021 | $164,088 |
| 65) | Contributions from January 1, 2022 - December 31, 2022 | $140,404 |
| 66) | Contributions from January 1, 2023 - December 31, 2023 | $157,291 |
| | | |
| 67) | Contributions from January 1, 2000 - December 31, 2004 - sum of items (43) - (47) | $390,949 |
| 68) | Contributions from January 1, 2001 - December 31, 2005 - sum of items (44) - (48) | $354,095 |
| 69) | Contributions from January 1, 2002 - December 31, 2006 - sum of items (45) - (49) | $346,272 |
| 70) | Contributions from January 1, 2003 - December 31, 2007 - sum of items (46) - (50) | $348,433 |
| 71) | Contributions from January 1, 2004 - December 31, 2008 - sum of items (47) - (51) | $397,768 |
| 72) | Contributions from January 1, 2005 - December 31, 2009 - sum of items (48) - (52) | $469,189 |
| 73) | Contributions from January 1, 2006 - December 31, 2010 - sum of items (49) - (53) | $548,897 |
| 74) | Contributions from January 1, 2007 - December 31, 2011 - sum of items (50) - (54) | $631,875 |
| 75) | Contributions from January 1, 2008 - December 31, 2012 - sum of items (51) - (55) | $705,935 |
| 76) | Contributions from January 1, 2009 - December 31, 2013 - sum of items (52) - (56) | $739,398 |
| 77) | Contributions from January 1, 2010 - December 31, 2014 - sum of items (53) - (57) | $749,775 |
| 78) | Contributions from January 1, 2011 - December 31, 2015 - sum of items (54) - (58) | $758,813 |
| 79) | Contributions from January 1, 2012 - December 31, 2016 - sum of items (55) - (59) | $765,142 |
| 80) | Contributions from January 1, 2013 - December 31, 2017 - sum of items (56) - (60) | $777,948 |
| 81) | Contributions from January 1, 2014 - December 31, 2018 - sum of items (57) - (61) | $793,061 |
| 82) | Contributions from January 1, 2015 - December 31, 2019 - sum of items (58) - (62) | $818,012 |
| 83) | Contributions from January 1, 2016 - December 31, 2020 - sum of items (59) - (63) | $823,761 |
| 84) | Contributions from January 1, 2017 - December 31, 2021 - sum of items (60) - (64) | $829,947 |
| 85) | Contributions from January 1, 2018 - December 31, 2022 - sum of items (61) - (65) | $805,857 |
| 86) | Contributions from January 1, 2019 - December 31, 2023 - sum of items (62) - (66) | $792,608 |
| | | |
| 87) | Total plan contributions from January 1, 2000 - December 31, 2004 | $516,988,732 |
| 88) | Total plan contributions from January 1, 2001 - December 31, 2005 | $546,270,106 |
| 89) | Total plan contributions from January 1, 2002 - December 31, 2006 | $594,313,723 |
| 90) | Total plan contributions from January 1, 2003 - December 31, 2007 | $658,548,598 |
| 91) | Total plan contributions from January 1, 2004 - December 31, 2008 | $714,683,306 |
| 92) | Total plan contributions from January 1, 2005 - December 31, 2009 | $743,921,716 |
| 93) | Total plan contributions from January 1, 2006 - December 31, 2010 | $760,816,868 |
| 94) | Total plan contributions from January 1, 2007 - December 31, 2011 | $787,991,559 |
| 95) | Total plan contributions from January 1, 2008 - December 31, 2012 | $808,563,179 |
| 96) | Total plan contributions from January 1, 2009 - December 31, 2013 | $841,689,300 |
| 97) | Total plan contributions from January 1, 2010 - December 31, 2014 | $916,886,675 |
| 98) | Total plan contributions from January 1, 2011 - December 31, 2015 | $1,027,281,071 |
| 99) | Total plan contributions from January 1, 2012 - December 31, 2016 | $1,114,042,880 |
| 100) | Total plan contributions from January 1, 2013 - December 31, 2017 | $1,222,198,403 |
| 101) | Total plan contributions from January 1, 2014 - December 31, 2018 | $1,328,345,605 |
| 102) | Total plan contributions from January 1, 2015 - December 31, 2019 | $1,393,441,278 |
| 103) | Total plan contributions from January 1, 2016 - December 31, 2020 | $1,478,796,386 |
| 104) | Total plan contributions from January 1, 2017 - December 31, 2021 | $1,533,192,770 |
| 105) | Total plan contributions from January 1, 2018 - December 31, 2022 | $1,589,226,873 |
| 106) | Total plan contributions from January 1, 2019 - December 31, 2023 | $1,617,928,514 |
| | | |
| 107) | Employer fraction of 2000 - 2004 contributions - item (67) divided by item (87) | 0.075620% |
| 108) | Employer fraction of 2001 - 2005 contributions - item (68) divided by item (88) | 0.064820% |
| 109) | Employer fraction of 2002 - 2006 contributions - item (69) divided by item (89) | 0.058264% |
| 110) | Employer fraction of 2003 - 2007 contributions - item (70) divided by item (90) | 0.052909% |
| 111) | Employer fraction of 2004 - 2008 contributions - item (71) divided by item (91) | 0.055657% |
| 112) | Employer fraction of 2005 - 2009 contributions - item (72) divided by item (92) | 0.063070% |
| 113) | Employer fraction of 2006 - 2010 contributions - item (73) divided by item (93) | 0.072146% |
| 114) | Employer fraction of 2007 - 2011 contributions - item (74) divided by item (94) | 0.080188% |
| 115) | Employer fraction of 2008 - 2012 contributions - item (75) divided by item (95) | 0.087307% |
| 116) | Employer fraction of 2009 - 2013 contributions - item (76) divided by item (96) | 0.087847% |
| 117) | Employer fraction of 2010 - 2014 contributions - item (77) divided by item (97) | 0.081774% |
| 118) | Employer fraction of 2011 - 2015 contributions - item (78) divided by item (98) | 0.073866% |
| 119) | Employer fraction of 2012 - 2016 contributions - item (79) divided by item (99) | 0.068682% |
| 120) | Employer fraction of 2013 - 2017 contributions - item (80) divided by item (100) | 0.063652% |

Pension Trust Fund for Operating Engineers
Estimated Withdrawal Liability Assessment for Terminations in Plan Year Beginning January 1, 2024

| | | |
|---|---|---|
| 121) Employer fraction of 2014 - 2018 contributions - item (81) divided by item (101) | 0.059703% | |
| 122) Employer fraction of 2015 - 2019 contributions - item (82) divided by item (102) | 0.058704% | |
| 123) Employer fraction of 2016 - 2020 contributions - item (83) divided by item (103) | 0.055705% | |
| 124) Employer fraction of 2017 - 2021 contributions - item (84) divided by item (104) | 0.054132% | |
| 125) Employer fraction of 2018 - 2022 contributions - item (85) divided by item (105) | 0.050707% | |
| 126) Employer fraction of 2019 - 2023 contributions - item (86) divided by item (106) | 0.048989% | |
| | | |
| 127) Allocated share of 12/31/2004 Pool - item (21) times item (107) | $16,957 | |
| 128) Allocated share of 12/31/2005 Pool - item (22) times item (108) | $10,659 | |
| 129) Allocated share of 12/31/2006 Pool - item (23) times item (109) | -$6,063 | |
| 130) Allocated share of 12/31/2007 Pool - item (24) times item (110) | $27,829 | |
| 131) Allocated share of 12/31/2008 Pool - item (25) times item (111) | $42,961 | |
| 132) Allocated share of 12/31/2009 Pool - item (26) times item (112) | $161,115 | |
| 133) Allocated share of 12/31/2010 Pool - item (27) times item (113) | $90,512 | |
| 134) Allocated share of 12/31/2011 Pool - item (28) times item (114) | $182,728 | |
| 135) Allocated share of 12/31/2012 Pool - item (29) times item (115) | $176,167 | |
| 136) Allocated share of 12/31/2013 Pool - item (30) times item (116) | -$111,527 | |
| 137) Allocated share of 12/31/2014 Pool - item (31) times item (117) | $137,267 | |
| 138) Allocated share of 12/31/2015 Pool - item (32) times item (118) | $218,319 | |
| 139) Allocated share of 12/31/2016 Pool - item (33) times item (119) | $137,572 | |
| 140) Allocated share of 12/31/2017 Pool - item (34) times item (120) | $53,755 | |
| 141) Allocated share of 12/31/2018 Pool - item (35) times item (121) | $205,258 | |
| 142) Allocated share of 12/31/2019 Pool - item (36) times item (122) | $90,910 | |
| 143) Allocated share of 12/31/2020 Pool - item (37) times item (123) | $210,379 | |
| 144) Allocated share of 12/31/2021 Pool - item (38) times item (124) | -$116,248 | |
| 145) Allocated share of 12/31/2022 Pool - item (39) times item (125) | $103,524 | |
| 146) Allocated share of 12/31/2023 Pool - item (40) times item (126) | -$129,040 | |
| 147) Total allocated share - sum of items (127) - (146) | $1,503,034 | |
| | | |
| 148) Preliminary de minimis amount (deductible) - smaller of $50,000 and item (147) | $50,000 | |
| 149) Reduction in de minimis amount - item (147) minus $100,000, but not less than $0 | $1,403,034 | |
| 150) Final de minimis amount - item (148) minus item (149), but not less than $0 | $0 | |
| | | |
| Critical Status Adjustment | | |
| 151) Unamortized Applicable Benefits as of December 31, 2023 | $160,964,263 | |
| 152) Allocated share - item (126) times item (151) | $78,855 | |
| | | |
| 153) Net Withdrawal Liability - item (147) minus item (150) plus item (152) | $1,581,889 | |
| | | |
| 154) Ten plan years of contributory hours through year preceding date of withdrawal | | |
| January 1, 2014 - December 31, 2014 | 17,191.25 | |
| January 1, 2015 - December 31, 2015 | 15,642.00 | 3 yr avg |
| January 1, 2016 - December 31, 2016 | 16,329.00 | 16,387.42 |
| January 1, 2017 - December 31, 2017 | 17,010.75 | 16,327.25 |
| January 1, 2018 - December 31, 2018 | 17,636.01 | 16,991.92 |
| January 1, 2019 - December 31, 2019 | 17,975.00 | 17,540.59 |
| January 1, 2020 - December 31, 2020 | 16,236.45 | 17,282.49 |
| January 1, 2021 - December 31, 2021 | 16,968.75 | 17,060.07 |
| January 1, 2022 - December 31, 2022 | 14,519.50 | 15,908.23 |
| January 1, 2023 - December 31, 2023 | 15,315.56 | 15,601.27 |
| | | |
| 155) Highest 3 year average annual hours | | 17,540.59 |
| 156) Highest contribution rate during the past ten years | | $10.27 |
| 157) Annual payment - item (155) times item (156) | | $180,141.86 |
| 158) Quarterly payment - item (157) divided by 4 | | $45,035.47 |
| 159) Number of full quarterly payments | | 52 |
| 160) Amount of last payment | | $21,250.66 |

EXHIBIT B

*PENSION TRUST FUND FOR OPERATING ENGINEERS*

**AMENDED WITHDRAWAL LIABILITY PROCEDURES**

## GENERAL MATTERS

I.    Building and Construction Industry Plan

The Board of Trustees has determined that the Plan primarily covers employees in the building and construction industry (ERISA §4203(b)(1)(B)(i)).

II.   Statutory Definitions for Withdrawn Employers When Substantially All the Employees with Respect to Whom the Employers had an Obligation to Contribute Under the Plan Perform Work in the Building and Construction Industry

A.    Complete Withdrawal (ERISA § 4203(b))
A complete withdrawal occurs if an employer ceases to have an obligation to contribute under the plan, and the employer either (1) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or (2) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

B.    Partial Withdrawal (ERISA §§ 4205, 4208(d) (I))
In general there is a partial withdrawal from a plan if for a plan year there is either (1) a 70% contribution decline (as defined in detail in ERISA § 4205(b)(1) ), or (2) a partial cessation of the employer's contribution obligation (as defined in ERISA ' 4205(b)(2) ).  However, employers in the building and construction industry are liable for partial withdrawals only if the employer's obligation to contribute under the plan is continued for no more than an insubstantial portion of its work in the craft and area jurisdiction of the collective bargaining agreement of the type for which contributions are required.

III   Statutory Definition for Withdrawn Employers When Not Substantially All Their Employees Worked in the Building and Construction Industry

A.    Complete Withdrawal (ERISA § 4203(a))
A complete withdrawal occurs when an employer (1) permanently ceases to have an obligation to contribute under the Plan, or (2) permanently ceases all covered operations under the plan.

B.      Partial Withdrawal (ERISA §4205(a))

There is a partial withdrawal by an employer from a plan on the last day of a plan year if for such plan year (1) there is a 70% contribution decline, or (2) there is a partial cessation of the employer's contribution obligation.

## ASSESSING WITHDRAWAL LIABILITY

IV.    Plan's Assessment (ERISA § 4202)

When an employer withdraws from the Plan,

A.      The Plan actuary shall calculate the amount of the employer's withdrawal liability based on information supplied to it by the Plan's manager and in accordance with Article XVI of the Plan, including PBGC Technical Update 10-3;

B.      The Plan manager shall notify the employer of the amount of the withdrawal liability; and

C.      The Plan manager with the assistance of the Plan's attorneys, if necessary, shall collect the amount of the withdrawal liability from the employer.

V.    Confirming Continued Work in Jurisdiction After Withdrawal

When the Plan acquires information by any means showing that an employer is either no longer contributing to the Plan or is contributing for no more than an insubstantial portion of its work previously reported, the Plan's attorney will:

A.      Check the employer's status with the Contractors State Licensing Board, Secretary of State, and other appropriate government agencies having relevant information;

B.      Attempt to determine whether or not the employer was working in the building and construction industry; and

C.      If it is determined that substantially all the employees for whom the employer had an obligation to contribute to the Plan worked in the building and construction industry, communicate with the Union district representatives of the area(s) in which the employer worked and contact the employer, if the employer is responsive, to determine whether or not the employer is continuing to perform work in the jurisdiction of the respective collective bargaining agreement.

VI.    Calculation of Withdrawal Liability

If after ascertaining the facts and consulting with the Plan's actuary and attorney as necessary, the Plan's attorney determines that there has been a complete or partial withdrawal, the Plan manager shall compile the necessary information and send it to the Plan's actuary for calculation of withdrawal liability. The Plan's actuary shall calculate the total amount of an employer's withdrawal liability and the amortized payment schedule and send it to the Plan manager.  ERISA § 4211(b)(2)(A).

VII.    Exit Audits

An employer may be subject to an exit audit upon its withdrawal from the Plan.  All amounts found due on audit to the Plan will be incorporated into the calculation of the withdrawal liability of the employer in accordance with ERISA § 4211(b)(2)(A).

VIII.   Withdrawal Liability Payments (ERISA § 4219)

A.    Periodic Payments:   An employer's withdrawal liability shall be payable over a period of years, not to exceed 20 years, necessary to amortize the amount in level annual payments.  ERISA § 4219(c)(1)(A)-(B).

B.    Annual Payment:   The amount of each annual payment shall be the product of (1) the average number of hours for the period of 3 consecutive plan years during the period of 10 consecutive plan years ending before the year of withdrawal in which the hours of the employer were the highest, multiplied by (2) the highest contribution rate at which the employer had an obligation to contribute during the 10 consecutive year period ending with the year of withdrawal.  ERISA § 4219(c)(1)(C).

C.    Quarterly Installments:   Each annual payment shall be payable in 4 equal installments due quarterly.  ERISA § 4219(c) (3).

D.    Payment Schedule:   Withdrawal liability shall be payable in accordance with the schedule set forth by the Plan beginning no later than 60 days after the date of demand notwithstanding any request for review or appeal of the determination or amount.  ERISA § 4219(c) (2).

E.    Prepayments.  An employer shall be entitled to prepay the outstanding amount of the unpaid annual withdrawal liability payments, plus accrued interest, if any, in whole or in part without penalty.  ERISA § 4219(c) (4).

IX.    Withdrawal Liability Assessment (ERISA § 4219(b))
As soon as practicable after an employer's withdrawal, the Plan manager will:

A.   <u>Notification of Amount</u>:  Notify the employer in writing of (1) the amount of withdrawal liability, and (2) the schedule for liability payments; and

B.   <u>Payment Demand</u>:  Demand payment in accordance with the schedule.

X.   <u>Interest</u>

A.   <u>Pre-Litigation</u> (ERISA § 4219(c) (3), (5)-(6)): If a withdrawal liability payment is not made when due, interest on the payment shall accrue from the due date until payment is received by the Plan.  If the withdrawal liability is accelerated, interest on the total accelerated amount shall accrue from the due date of the first withdrawal installment payment which was not timely made.

The applicable interest rate for each calendar quarter shall be (1) the average quoted prime rate on short-term commercial loans for the 15th day (or next business day) of the month preceding the beginning of each calendar quarter as reported by the Board of Governors of the Federal Reserve System in Statistical Release H.15, plus (2) 3%.

B.   <u>Post-Litigation</u> (ERISA § 502(g)(2)): Once legal action is filed,  the delinquent withdrawal liability installment payment(s) or total accelerated withdrawal liability shall be treated in the same manner as a delinquent contributions and will incur interest at the rate of 10% per year from the due date of the first withdrawal installment payment which was not timely made.

XI.  <u>Liquidated Damages</u>

A.   <u>Pre-Litigation</u>: If a withdrawal liability installment payment is not received by the due date as specified in the payment schedule in the assessment, the employer shall be liable for liquidated damages of 10% of the unpaid withdrawal liability installment payment. If the total withdrawal liability is accelerated by the Plan due to an employer's default, the employer shall be liable for liquidated damages of 10% of the total accelerated amount.

B.   <u>Post-Litigation</u> (ERISA § 502(g)(2)): Once legal action is filed, it shall be treated in the same manner as a delinquent contribution so that liquidated damages on the unpaid withdrawal liability installment payment(s) or total accelerated withdrawal liability shall be increased to the greater of:

(1) 20% of the total unpaid withdrawal liability as of the date the action is filed and thereafter, or

      (2) Interest on the total unpaid withdrawal liability as of the due date of the first withdrawal installment payment which was not timely made.

XII.    Defaults (ERISA § 4219(c) (5))

In the event of a default, the Plan may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. Subject to PBGC § 4219.31, the term "default" shall mean:

    A.    The failure of an employer to make, when due, any withdrawal liability payment, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and

    B.    Any event which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability, including but not limited to, the employer is going out of business, filing of bankruptcy by the employer, a sale of the assets of the employer, or any indication that the employer (or its principal) will move outside the jurisdiction of the respective collective bargaining agreement.

XIII.    Control Group (ERISA § 4219(a))

Within 30 days after receiving a written request from the Plan, an employer shall furnish all information relating to all trades and businesses within the same control group as the employer as defined in ERISA § 4001(b)(1). The Plan may enforce this obligation by filing an action in federal court in the Northern District of California, and shall be entitled to recover all reasonable attorneys' fees and costs incurred in such an action.

**COLLECTING WITHDRAWAL LIABILITY**

XIV.    Request for Review (ERISA § 4219(b)(2) )

    A.    No later than 90 days after the employer receives a notice of withdrawal liability assessment, the employer may in writing:

        (1)    Ask the Plan to review any specific matters relating to the determination of the employer's liability and schedule of payments;

        (2)    Identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocated to the employer; and

        (3)    Furnish any additional relevant information to the Plan.

B.    After a reasonable review of any matter raised, the Plan shall notify the employer of:

(1)    The Plan's decision;

(2)    The basis of the decision; and

(3)    The reason for any change in the determination of the employer's liability or schedule of liability payments.

C.    Requests for review made more than 90 days after receipt of the withdrawal liability assessment by the employer will not be considered by the Plan.

XV.    Arbitration (ERISA § 4221)

A.    Exclusive Remedy:  Any dispute between an employer and the Plan concerning a determination of withdrawal liability made under ERISA §§ 4201 through 4219 must be resolved through arbitration.

B.    Initiation of Arbitration:  Either party may initiate arbitration (not merely request arbitration) within 60 days after the earlier of:

(1) The Plan's response to the request for review by the employer; or

(2) 120 days after the date of the employer's request for review.

C.    Rules of Arbitration.   Arbitration proceedings shall be initiated and conducted in accordance with the American Arbitration Association Multi-Employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes.

D.    Joint Initiation.  The parties may jointly initiate arbitration within 180 days after the date of withdrawal liability assessment.

E.    Venue.  Arbitration proceedings shall be conducted within the jurisdiction of the Federal District Court for the Northern District of California.

F.    Presumption of Correctness.  Any determinations made by the Plan with respect to the calculation and assessment of withdrawal liability are presumed to be correct unless the party contesting the determination shows by a preponderance of the

evidence that the determination was unreasonable or clearly erroneous.  ERISA § 4221(a)(3).

G.    <u>Payments Required During Arbitration</u>.  During arbitration, withdrawal liability installment payments shall be paid by an employer in accordance with the schedule of payments specified in the assessment until an arbitrator issues a final decision. ERISA § 4221(d).

H.    <u>Due According to Schedule:</u>  If arbitration is not timely initiated, the amounts demanded by the Plan shall be due and owing on the schedule set forth in the assessment by the Plan.  The plan sponsor may bring an action in a state or federal court of competent jurisdiction for collection.  ERISA § 4221 (b) (1).

I.    <u>Late Attempts to Initiate Arbitration:</u>  Failure by the employer to initiate arbitration in a timely manner will constitute a waiver of the right to contest the withdrawal liability and a waiver of all available affirmative defenses.

XVI.    <u>Collection Actions</u>

A.    <u>Due According to Schedule</u>.  If arbitration has not been initiated pursuant to XV, the amounts demanded by the Plan shall be due and owing on the schedule set forth in the assessment by the Plan. ERISA § 4221 (b )(1).  The employer shall be liable for the entire withdrawal liability if accelerated by the Plan under ERISA § 4219(c)(5).

B.    <u>Court Jurisdiction</u>.   The Plan may bring a legal action for collection in either state or federal court. ERISA § 4221(b)(1).

C.    <u>Statute of Limitations</u>.  In general, the statute of limitations for collection actions on withdrawal liability is 6 years after the date on which each unpaid payment was due. ERISA § 4301(f).

D.    <u>Recovery Amounts</u>.  In any action to recover withdrawal liability the Plan shall have all the rights it has with respect to delinquent contributions under ERISA §§ 515 and 502(g), including the right to recover:

(1)    the unpaid assessed withdrawal liability,

(2)    interest on the unpaid assessed withdrawal liability,

(3)    an amount equal to the greater of (a) additional interest on the unpaid assessed withdrawal liability, or (b) liquidated damages of 20% of the assessed withdrawal liability,

(4)    reasonable attorneys' fees and costs incurred by the Plan, and

(5)    such other legal or equitable relief as the court deems appropriate.

## MISCELLANEOUS

XVII.   <u>Abatement</u> (PBGC Reg. § 4207.1-4207.10)

To have withdrawal liability abated, an employer must apply to the Plan by the first scheduled withdrawal liability payment falling after the employer resumes covered operations, or if later, the 15th calendar day after the employer resumes covered operations. Upon receipt of proper application, the Plan will proceed as required by PBGC Reg. § 4207.3.

An employer that completely withdraws and subsequently reenters the Plan shall have its liability for that withdrawal abated if the employer resumes covered operations under the Plan, and the number of covered hours during the measurement period designated in the regulations after the employer resumes covered operations exceeds 30% of the average number of covered hours for the 2 plan years in which its covered hours were the highest within the 5 plan years immediately preceding the year of complete withdrawal. PBGC Reg. § 4207.5.

Partial withdrawal liability that has been assessed may be abated in accordance with PBGC Reg. § 4207.8.

XVIII.   <u>Pro-Rata Reduction of Partial Withdrawal Liability</u> (PBGC Reg. § 4208.4(c)(1))

An Employer may qualify for a pro-rata reduction of its partial withdrawal liability for a future plan year by reporting the greater of: (1) 110% of the hours in the year of partial withdrawal; or (2) the number of hours reported in the year after the year of partial withdrawal. This reduction would be in effect for only one year and may result in the Employer receiving a credit. PBGC Reg. § 4208.6(b).

XIX.   <u>Free-Look Rules Effective July 1, 2007</u>
The Free Look Rules under ERISA § 4210 shall apply to an Employer which first has an

obligation to contribute to the Plan on or after July 1, 2007, subject to the rules set forth in Plan Section 16.06.

XX.    Rehabilitation Plan (ERISA § 305(e)(9) and 304(f)(3))

A.    If the Plan is in critical status, any benefit reductions under ERISA § 305(e)-(f) shall be disregarded in determining the Plan's unfunded vested benefits for purposes of determining an employer's withdrawal liability.

B.    If the Plan is in critical status, any surcharges under ERISA § 305(e)(7) shall be disregarded in determining the allocation of unfunded vested benefits to an employer under ERISA § 4211, except for purposes of determining the unfunded vested benefits attributable to an employer under ERISA § 4211(c)(4) or a comparable method approved under ERISA § 4211(c)(5).

XXI.    Estimate of Withdrawal Liability

If an employer requests in writing that the Plan make an estimate of the employer's potential withdrawal liability, the Plan manager shall furnish the employer with an estimated withdrawal liability in accordance with ERISA § 101(l). The employer may be required to pay the reasonable cost of making such estimate.

Adopted this December 16, 2019

_____          _____
Dan Reding, Co-Chairman                          James Murray, Co-Chairman

Employer receiving a credit.  PBGC Reg. § 4208.6(b).

XIX.   <u>Free-Look Rules Effective July 1, 2007</u>

The Free Look Rules under ERISA § 4210 shall apply to an Employer which first has an obligation to contribute to the Plan on or after July 1, 2007, subject to the rules set forth in Plan Section 16.06.

XX.   <u>Rehabilitation Plan</u> (ERISA § 305(e)(9) and 304(f)(3))

A.   If the Plan is in critical status, any benefit reductions under ERISA § 305(e)-(f) shall be disregarded in determining the Plan's unfunded vested benefits for purposes of determining an employer's withdrawal liability.

B.   If the Plan is in critical status, any surcharges under ERISA § 305(e)(7) shall be disregarded in determining the allocation of unfunded vested benefits to an employer under ERISA § 4211, except for purposes of determining the unfunded vested benefits attributable to an employer under ERISA § 4211(c)(4) or a comparable method approved under ERISA § 4211(c)(5).

XXI.   <u>Estimate of Withdrawal Liability</u>

If an employer requests in writing that the Plan make an estimate of the employer's potential withdrawal liability, the Plan manager shall furnish the employer with an estimated withdrawal liability in accordance with ERISA § 101(l).  The employer may be required to pay the reasonable cost of making such estimate.

Adopted this December 16, 2019

_____          _____
Dan Reding, Co-Chairman                James Murray, Co-Chairman

P:\CLIENTS\OE3WL\Procedures and Guidelines\Procedures\Withdrawal Liability Procedures 121619.doc

EXHIBIT C

**EXHIBIT C**

***Pension Plan for Pension Trust Fund for Operating Engineers***
**Request for Information Under ERISA §4219(a)**

Please furnish information and documents requested below **within 30 days** of the date of notice of withdrawal liability assessment pursuant to ERISA § 4219(a). The term "Assessed Employer(s)" means the employer (or employers) that has been assessed withdrawal liability as specified in the notice of assessment to which this Exhibit C is attached. If a request is inapplicable , please specify the reason (i.e. shareholder documentation inapplicable because Assessed Employer is a partnership).

1.     Provide documentation identifying each shareholder of the Assessed Employer(s) and the respective interests held by each shareholder in the corporation, including but not limited to stock certificates, stock registries and Form 1120 - Schedule K-1 from corporate tax returns filed for the past three (3) years.

2.     Provide documentation identifying each member of the Assessed Employer(s) and the respective interest held by each member in the limited liability company (LLC), including but not limited to operating agreements and Form 1065 – Schedule K-1 from LLC tax returns filed for the past three (3) years.

3.     Provide documentation identifying each partner of the Assessed Employer(s) and the respective interest held by each of them in the partnership, including but not limited to partnership agreements and  Form 1065 – Schedule K-1 from partnership tax returns filed for the past three (3) years.

4.     Identify all fictitious business names used by the Assessed Employer(s) at any time in the past three (3) years.

5.     Provide the addresses for all locations where the Assessed Employer(s) conducted business at any time in the past three (3) years, and all lease agreements for such locations.

6.     Identify any other trades and/or businesses in which any owner identified in response to requests 1, 2 and 3, above, held an interest and the respective interest held by each of them in the trades and/or businesses at any time in the past three (3) years.  Please note that a trade or business includes corporations, LLCs, partnerships, sole proprietorships, joint ventures, trusts, and real estate holdings (other than an owner's primary residence).  If any trusts are identified in response to this request, please name the trustee, grantor and beneficiaries of each trust.

7.     Please describe each sale, transfer, assignment, or change in ownership involving the Assessed Employer or any trades and/or businesses identified in response to No. 6, above.

8.     Provide all lease agreements for any real estate holdings and/or trust agreements for any trusts identified in response to request No. 6, above.

9.      Provide all contracts or agreements, including loan agreements, between the Assessed Employer(s) and any of its shareholder (and/or his/her spouse, child, parent, grandparents) identified in response to requests No. 1, 2 and 3, above, in effect at any time in the past three (3) years, including all addendums and amendments thereto.

10.      Provide federal and state income tax returns for the Assessed Employer(s) for the past three (3) years, including all supporting schedules, statements, forms, attachments, supplements, and/or amendments.

11.      Provide the financial statements, audited and unaudited, for the Assessed Employer(s) for the past three (3) years.

12.      Indicate whether the Assessed Employer(s) has sold or transferred any assets valued in excess of $20,000 at any time in the past three (3) years, or intends to sell or transfer any assets at any time within the next twelve (12) months.  If so, please provide an itemized list of all such assets and a copy of the purchase agreement.

13.      Indicate whether the Assessed Employer(s) has filed for bankruptcy, made an assignment for the benefit of creditors, merged, or otherwise liquidated or dissolved in the past three (3) years.

14.      Indicate whether the Assessed Employer(s) intends to file for bankruptcy, make an assignment for the benefit of creditors, merge, or otherwise liquidate or dissolve within the next twelve (12) months.

15.      Identify all persons or entities that provided professional services, including but not limited to accountancy, tax and legal services, to the Assessed Employer(s) for the past three (3) years.

**Note**: In the event sufficient information and documentation requested above is not timely provided, the Plan may assert claims against the Assessed Employer(s) for violating ERISA § 4219(a) and seek a Court order to compel compliance and an award of attorneys' fees and costs incurred as a result pursuant to ERISA §§ 502(g) and 4301(e).

EXHIBIT D



(510) 906-4710
www.sjlawcorp.com

**PENSION PLAN FOR PENSION TRUST FUND FOR OPERATING ENGINEERS**

**WITHDRAWAL LIABILITY FREQUENTLY ASKED QUESTIONS**

*Disclaimer: This Frequently Asked Questions (FAQ) is a broad general overview to withdrawal liability under the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA") as added to Employee Retirement Income Security Act of 1974 ("ERISA").  It is intended to supplement the attached Withdrawal Liability Procedures adopted by the Board of Trustees. This list does not address all possible issues relating to withdrawal liability and should not be considered legal advice.  You should consult your own counsel regarding any specific question you have regarding withdrawal liability.*

**Contents**

- Definition of Withdrawal Liability (Questions #1-2)
- Complete Withdrawal Liability (Question #3)
- Partial Withdrawal Liability (Question #4)
- Controlled Group (Question #5)
- Successor (Question #6)
- Estimate of Withdrawal Liability (Question #7)
- Exceptions: Complete and Partial Withdrawal Liability (Questions #8-10)
- Limitations: Complete and Partial Withdrawal Liability (Question #11)
- Abatement: Complete and Partial Withdrawal Liability (Questions #12-13)
- Evasion of Withdrawal Liability (Question #14)
- Financials and Settlement Offers (Questions #15-17)
- Duties (Questions #18-19)

**DEFINITION OF WITHDRAWAL LIABILITY**

**1. What is withdrawal liability?**

Withdrawal liability is a statutory exit charge/fee for employers who cease contributing to a multiemployer defined benefit pension plan with unfunded vested benefits. If an employer withdraws, "then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability."[1] The Pension Plan for Pension Trust Fund for Operating Engineers

---

[1] ERISA §4201(a), 29 U.S.C. §1381(a).

Pension Plan) is underfunded, meaning that its projected assets are not anticipated to cover its projected liabilities.  The difference between its projected assets and liabilities is its unfunded vested benefits.  Fortunately, as of the date of this FAQ in 2021, the financial health of the Pension Plan has improved in recent years.

Withdrawal liability is the employer's proportionate share of the Pension Plan's unfunded vested benefits, as determined under a statutory formula.  An employer may timely make every required contribution to the Pension Plan and still be assessed withdrawal liability when it withdraws from the Pension Plan.  The liability is imposed by law and is not part of the employer's bargained obligations under its collective bargaining agreement.

### 2.  What are the types of withdrawal liability?

There are two types of withdrawal liability, complete withdrawal liability[2] and partial withdrawal liability[3].  Some responses below relate solely to complete withdrawals, some relate solely to partial withdrawals, and some are common to both.

### COMPLETE WITHDRAWAL LIABILITY

### 3.  What is a complete withdrawal under ERISA?

A complete withdrawal occurs when an employer either has permanently ceased operations, or has permanently ceased to have an obligation to make contributions to the Pension Plan.[4]  A complete withdrawal can occur regardless of the reason for it, and even if the employer's withdrawal is involuntary, such as decertification of the union by the employees or a disclaimer of interest by the union.

### PARTIAL WITHDRAWAL LIABILITY

### 4.  What is a partial withdrawal under ERISA?

A partial withdrawal occurs in a few different situations.  One situation occurs when an employer's hours have declined by 70% or more.[5]  This is done by comparing each year of a three-year testing period compared to the average of the two highest years in the five preceding years.  For example, for a 70% decline partial withdrawal to have occurred in 2021, it would mean that the hours reported by the employer in each of 2019, 2020 and 2021 are less than 30% of the hours reported in the average of the two highest years during the period of 2014-2018.

A partial withdrawal can also occur if one or more, but fewer than all of the employer's collective bargaining agreements terminate and the employer continues to perform work in the jurisdiction of the terminated collective bargaining agreement of the type for which contributions

---

[2] ERISA §4203(a), 29 U.S.C. §1383(a).
[3] ERISA §4205(a), 29 U.S.C. §1385(a).
[4] ERISA §4203(a), 29 U.S.C. §1383(a).
[5] ERISA §4205(a)(1), 29 U.S.C. §1385(a)(1).

2

were previously required or transfers such work to another location or entity owned or controlled by the employer.[6]

A partial withdrawal can also occur if the employer's operations cease at one or more but fewer than all of its facilities and the employer continues to perform work at the facility of the type for which the obligation to contribute ceased.[7]

## CONTROLLED GROUP

### 5.  What constitutes a controlled group and how is it relevant to withdrawal liability?

A controlled group includes all trades and businesses under common control; these trades or businesses are treated as a single employer for withdrawal liability purposes.[8]  Two or more businesses are under common control if the same five or fewer persons or entities have both a controlling interest (at least 80% ownership) and effective control (at least 50% ownership of each business) at the time of withdrawal.[9]  A controlled group also includes subsidiaries.[10]

If withdrawal liability is assessed, all members of the controlled group at the time of withdrawal are liable for the withdrawal liability.  For a complete withdrawal to occur, all members of a controlled group must incur a complete withdrawal, as described above.  If a signatory employer incurs a complete withdrawal, but a controlled group member continues to perform covered work without an obligation to contribute to the Pension Plan, then the building and construction industry exception to withdrawal liability, discussed below, will not apply.

## SUCCESSOR

### 6.  What is a successor entity?

A successor may be deemed liable for the withdrawing employer's withdrawal liability if there is substantial continuity between the two enterprises and the successor entity has constructive or actual notice of the withdrawal liability.  Factors relevant to successorship include, but are not limited to, whether the companies have the same customer base, use the same location, workforce, supervisors or equipment and offer the same services.[11]  A successor entity that is performing covered work without an obligation to contribute to the Pension Plan will prevent an employer from qualifying for the building and construction industry exception to withdrawal liability, discussed below.

---

[6] ERISA §4205(b)(2)(A)(i), 29 U.S.C. §1385(b)(2)(A)(i).

[7] ERISA §4205(b)(2)(A)(ii), 29 U.S.C. §1385(b)(2)(A)(ii).

[8] ERISA §4001(b)(1), 29 U.S.C. §1301(b)(1).

[9] 26 CFR §1.414(c)-2.

[10] 26 CFR §1.414(c)-2(b).

[11] *Resilient Floor Covering Pension Trust Fund Bd. of Trs. v. Michael's Floor Covering*, 801 F.3d 1079, 1085 (9th Cir. 2015).

3

## ESTIMATE OF WITHDRAWAL LIABILITY

**7. We have not been assessed withdrawal liability but would like to know how much it may be.  Can we obtain an estimate of our potential withdrawal liability?**

A contributing employer can request an estimate of its withdrawal liability from the Trust Fund Office once in a 12-month period.[12]  The fee for calculating the estimate of withdrawal liability is $500 (current as of December 21, 2021).  Please send a written request and fee to: Brandon Carter, Client Services Manager, Operating Engineers' Pension Trust Fund, 1600 Harbor Bay Pkwy., #200, Alameda, CA 94502.

## EXCEPTIONS TO WITHDRAWAL LIABILITY: COMPLETE AND PARTIAL

**8. Does a sale of stock result in a withdrawal under ERISA?**

A withdrawal does not occur solely due to a change in corporate form, including a stock sale[13] so long as the employer continues to contribute to the Pension Plan as required by its collective bargaining agreement.

**9. Does a sale of assets result in a withdrawal?**

A sale of assets may result in a withdrawal liability assessment.  If the buyer and seller do not wish to incur withdrawal liability due to the asset sale, they should follow the requirements of ERISA §4204, 29 U.S.C. §1384.  Meeting these requirements will have a number of effects, including that the buyer will effectively inherit up to five years of the seller's contribution history.[14]  To comply, the buyer and seller must meet the following requirements supported by the following:[15]

1. <u>Ownership information</u> –Documentation showing that the buyer and seller are "unrelated."[16]  This requirement can be satisfied by stock certificates or the K-1 portion of tax returns that shows ownership for both the buyer and seller.

2. <u>Purchaser must contribute for substantially the same number of hours</u> – The purchaser must contribute to the Trust Fund for substantially the same number of hours as the seller.[17]  There is no required advance documentation for this, as it will be monitored after the sale.

3. <u>Bond requirement</u> –Proof of bond[18], or a variance of this bond requirement must be requested.[19]

---

[12] ERISA §101(l), 29 U.S.C. §1021(l).
[13] ERISA §4218(1), 29 U.S.C. §1398(1).
[14] ERISA §4204, 29 U.S.C. §1384.
[15] ERISA §4204, 29 U.S.C. §1384.
[16] ERISA §4204(a)(1), (d), 29 U.S.C. §1384(a)(1), (d).
[17] ERISA §4204(a)(1)(A), 29 U.S.C. §1384(a)(1)(A).
[18] ERISA §4204(a)(1)(B), 29 U.S.C. §1384(a)(1)(B).
[19] 29 CFR §4204.11 – 4204.13.

4

4. <u>Contract-sale provisions</u> – Certain contract sale-provisions must be included[20], or a variance of this sale-contract requirement must be requested.[21]

If the parties decide to submit a request to Fund Counsel for a variance or exemption from the requirements for a bond or the contract provisions, the request must come from both the buyer and seller and be accompanied by documentation showing that they qualify for the variance. The request and documents will then be submitted to the Trustees for their review and determination.

In order to qualify for a variance, the buyer and seller must meet one or more of the following:

(1) De Minimis Test – This test is met if the amount of the bond does not exceed $250,000.[22]
(2) Net Income Test – The buyer's net income after taxes for its most recent three years prior to the year of the sale equals or exceeds 150% of the amount of the bond.[23]
(3) Net Tangible Assets Test – The buyer's net tangible assets exceeds the amount of withdrawal liability that would have been assessed, including both the buyer and seller's contribution history.[24]

## 10. Do we qualify for an exception to withdrawal liability because we work in the building and construction industry?

Many, but not all, employers that contribute to the Pension Plan qualify for the building and construction industry exception to withdrawal liability.[25] This exception applies if "substantially all" (85% or more) of the employees reported to the Pension Plan are in the building and construction industry and the Pension Plan primarily covers industry employees.[26] This Pension Plan primarily covers industry employees. This exception does not apply if the employer either continues to perform work in the jurisdiction of the collective bargaining agreement or resumes such work within a five-year period after its obligation ceased without renewing its obligation to contribute.[27] Qualification for the building and construction industry exception is determined on a case-by-case basis. The Pension Plan may request detailed information about the employees' work activities for an eight-year period to determine whether the exception applies.

---

[20] ERISA §4204(a)(1)(C), 29 U.S.C. §1384(a)(1)(C).
[21] 29 CFR §§4204.11 – 4204.13.
[22] 29 CFR §4204.12.
[23] 29 CFR §4204.13(a)(1).
[24] 29 CFR §4204.13(a)(2).
[25] ERISA §4203(b), 29 U.S.C. §1383(b).
[26] ERISA §4203(b)(1)(B), 29 U.S.C. §1383(b)(1)(B).
[27] ERISA §4203(b)(2), 29 U.S.C. §1383(b)(2).

## LIMITATIONS TO WITHDRAWAL LIABILITY: COMPLETE AND PARTIAL

### 11. What are other potential exceptions and/or reductions in withdrawal liability?

Free look rule – No withdrawal liability will be assessed if the employer (and any controlled group members) withdraws within five years from the date it first had an obligation to contribute to the Pension Plan.[28]  The Pension Plan has a five-year free look provision.

_De minimis_ exception – Reduction in withdrawal liability applicable to very small employers.[29] Automatically applied by the Pension Plan actuary.

20-year cap – Reduction in withdrawal liability if period to amortize the withdrawal liability exceeds 20 years.[30]  Automatically applied by the Pension Plan actuary.

Sale of assets limitation – Reduction in withdrawal liability if there is a sale of substantially all or all assets to an unrelated third party in a bona fide transaction.[31]

Insolvency involving liquidation or dissolution – An employer that is insolvent and is undergoing liquidation or dissolution may obtain a reduction in its withdrawal liability.[32]  Fund counsel will request relevant financial information to determine an employer's insolvency and liquidation valuations.

### ABATEMENT: COMPLETE AND PARTIAL WITHDRAWAL LIABILITY

### 12. Can I rejoin the Pension Plan and eliminate my withdrawal liability (applicable to complete withdrawals only)?

Yes, an employer can rejoin and enter into a new collective bargaining that requires contributions to the Pension Plan.  This is known as abatement.  Successful abatement will result in no future withdrawal liability payments being due after the abatement criteria are met, except for delinquent payments.[33]  In order to qualify for abatement, an employer must report 30% of the hours of the average of the two highest years in the five years preceding the year of withdrawal during the year following the abatement application.  The abatement request must comply with all applicable regulations, including by submitting a written request to the Trust Fund.[34]

---

[28] ERISA §4210; 29 U.S.C. §1390.
[29] ERISA §4209(a), 29 U.S.C. §1389(a).
[30] ERISA §4219(c)(1), 29 U.S.C. §1399(c)(1).
[31] ERISA §4225(a), 29 U.S.C. §1405(a).
[32] ERISA §4225(b), 29 U.S.C. §1405(b).
[33] ERISA §4207, 29 U.S.C. §1387.
[34] 29 C.F.R. §§4207.1 through 4207.10.

**13. We were assessed with partial withdrawal liability, but our hours have rebounded. Can we eliminate or reduce our withdrawal liability (applicable to partial withdrawals only)?**

An employer can potentially eliminate partial withdrawal liability in a procedure known as abatement and/or reduce it via a pro-rata reduction. Successful abatement will result in no future withdrawal liability payments being due after the abatement criteria are met, except for delinquent payments. There are two types of abatement for partial withdrawals:

(1) 90% abatement threshold – An employer will need to report 90% of hours of the High Base Year Average for two consecutive years.[35] The High Base Year Average is the average of the two highest years from the seventh through the third year prior to the year of withdrawal. For example, if there was partial withdrawal as of December 31, 2021, then the High Base Year would be the two highest years in the period from 2014 through 2018. An employer can qualify for abatement by meeting the High Base Year Average with any two consecutive years.

(2) 30% abatement threshold – An employer will need to report 30% of the High Base Year Average for two consecutive years and the total number of hours that all employers contributed to the Trust Fund is at least 90% of the hours in the year of the partial withdrawal.[36] An employer can qualify for abatement by meeting the High Base Year Average with any two consecutive years.

Pro Rata Reduction – An employer may receive a one-year reduction in the withdrawal liability if an employer reports the greater of: (1) 110% of the hours in the year of partial withdrawal; or (2) the number of hours reported in the year after the year of partial withdrawal.[37]

### EVASION OF WITHDRAWAL LIABILITY

**14. What are transactions to evade or avoid withdrawal liability?**

If a principal purpose of any transaction is to evade or avoid withdrawal liability, the Pension Plan may disregard the transaction and act as if that transaction had not taken place.[38] The test does not require bad faith or a sham transaction in order for the Pension Plan to disregard it. Further, the test does not require that evading or avoiding liability be the only purpose of the transaction, just one of the principal purposes.

---

[35] ERISA §4208(a), 29 U.S.C. §1388(a).
[36] ERISA §4208(b), 29 U.S.C. §1388(b).
[37] ERISA §4208(c), 29 U.S.C. §1388(c); 29 C.F.R. §4208(c)(1).
[38] ERISA §4212(c), 29 U.S.C. §1392(c).

**FINANCIALS AND SETTLEMENT OFFERS**

**15. The Pension Plan has sent me a request for sensitive ownership and financial information. Do I have to provide the requested information and documents?**

Yes, the Pension Plan is allowed request "such information as the plan sponsor reasonably deems necessary[.]"[39]  Sensitive personal information such as Social Security numbers or names of minor children may be redacted.

**16. We were assessed with withdrawal liability, but we do not agree with the assessment. Can we appeal the assessment?**

Yes, an employer may ask the Trustees to review any specific matters relating to the determination and schedule of payments, identify any inaccuracy in the amount of unfunded vested benefits allocation, and may furnish any additional relevant information.[40]  Any such appeal must be made within *ninety (90) days* after receipt of the letter of assessment and this deadline has been strictly construed by the courts.

Any dispute concerning a determination of withdrawal liability is to be resolved through arbitration.[41]  An employer must initiate arbitration within the 60-day period after the earlier of: 120 days after the request described above, or the date the Pension Plan notifies you of its decision in response to the request.[42]  This deadline has been strictly construed by the courts.

**17. How do I make a settlement offer for less than the full amount of withdrawal liability owed?**

An employer may submit a written settlement offer to the Fund counsel to be considered by the Trustees.  If an employer is making this request pursuant to a financial hardship, it must provide relevant financial information to determine the extent of the financial hardship and reasonableness of the offer.

**DUTIES**

18. **What are the obligations of the Trustees**?

When an employer withdraws, the Trustees of the Pension Plan are required by federal law to "(1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability, and (3) collect the amount of the withdrawal liability from the employer."[43]  In carrying out their duties under ERISA, the Trustees act "solely in the interest of the participants and beneficiaries" of the Pension Plan.[44]

---

[39] ERISA §4219(a); 29 U.S.C. §1399(a).
[40] ERISA §4219(b)(2); 29 U.S.C. §1399(b)(2).
[41] ERISA §4221(a), 29 U.S.C. §1401(a).
[42] ERISA §4219(b)(2)(A).
[43] ERISA §4202, 29 U.S.C. §1382.
[44] ERISA §404(a)(1), 29 U.S.C. §1104(a)(1).

8

It is a prohibited transaction under federal law for the Trustees to provide services to employers or use plan assets to benefit employers.[45]

**19. Can the Fund Counsel advise me on the interpretation or application of withdrawal liability laws and regulations?  For example, can the Fund Counsel advise me how to qualify for abatement, building and construction industry exception or sale of assets exception?**

No.  A lawyer cannot advise a third party if it would constitute a conflict of interest and breach the duty of loyalty to the client (*i.e.,* Pension Plan).[46]

*Disclaimer: This Frequently Asked Questions (FAQ) is a broad general overview to withdrawal liability under the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA") as added to Employee Retirement Income Security Act of 1974 ("ERISA").  This list does not address all possible issues relating to withdrawal liability and should not be considered legal advice.  You should consult your own counsel regarding any specific question you have regarding withdrawal liability.*

---

[45] ERISA §406(a), 29 U.S.C. §1106(a).
[46] State Bar of California Professional Rules of Conduct #1.7

9